IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BILLIE PARKS on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. CIV-09-212-D |
| AT&T MOBILITY, LLC and ) RADIO SHACK CORPORATION, ) ) | |
| Defendants. ) | |

## **O R D E R**

Before the Court are motions to dismiss filed by Defendant Radio Shack Corporation ("Radio Shack") [Doc. No. 28] and Defendant AT&T Mobility, LLC ("ATTM") [Doc. No. 29]. Both motions seek dismissal of Plaintiff's complaint for failure to state a claim on which relief can be granted and failure to plead fraud with particularity, pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). Plaintiff has filed a combined response to both motions, and Defendants have replied. The motions are thus at issue.

Plaintiff asserts claims of common law fraud or fraud in the inducement and violation of state consumer protection laws in a Class Action Complaint filed under 28 U.S.C. § 1332(d)(1).[1] The claims concern a retail transaction in which Plaintiff purchased a personal computer at a Radio Shack store and obtained a discounted price by subscribing to a wireless internet service agreement

---

[1] Plaintiff states, upon information and belief, that thousands of similarly situated customers exist and that this case should proceed as a class action under Fed. R. Civ. P. 23. However, no motion for class certification has been filed, and no assessment of these allegations has been made. ATTM argues in its motion that Plaintiff's claims are not appropriate for class action treatment due to the insufficiency of her allegations and the nature of the claims asserted. In light of the Court's disposition of the instant motions, the Court finds that the issue of class certification should be reserved for later decision.

with ATTM that allegedly did not disclose fully and accurately the usage charges that would be incurred. Specifically, Plaintiff alleges in her pleading as follows:

> In December, 2008, Radio Shack advertised and promoted for sale the netbook computer for the significantly discounted price of $99.99. In order to purchase the Netbook computer for that price, Plaintiff and other Radio Shack customers were required to subscribe to an AT&T DataConnect plan under a 2-year contract. Radio Shack advertised and promoted the AT&T DataConnect plan at a cost of $60.00 per month.
>
> The AT&T "Customer Service Summary" and the accompanying "Wireless Service Agreement" provides for a "Rate Plan Charge" of $60.00 per month for a term of service of 24 months. Although the Customer Service Summary states "additional charges apply" it was impossible for the average consumer or even one with considerable sophistication in such matters to determine what those additional charges would be based upon the information contained in the Customer Service Summary and the Wireless Service Agreement.
>
> Although the Customer Service Summary informed Plaintiff and other consumers that their first bill might be higher than expected because of a $36.00 activation fee, one month's service billed in advance, and prorated charges and fees for the month when the customer signed up, neither Plaintiff nor other consumers were informed, nor could they have reasonably discerned from the paperwork that wireless internet usage exceeding 5GB per month would result in astronomical additional charges running into the thousands of dollars.
>
> In late January, and early February, 2009, Plaintiff and other AT&T customers whose wireless use exceeded 5GB per month received bills from AT&T for literally thousands of dollars in usage charges. In Plaintiff's case her usage charges for the billing cycle of 12/21/08 through 1/20/09 were $5,077.81.

*See* Compl. [Doc. No. 1], ¶¶ 7-10.

Plaintiff's fraud claim is asserted in Count I of the Complaint. Plaintiff alleges in Count I that Defendants marketed and sold computers and internet services by utilizing "false, misleading and deceptive advertising" and utilizing documents (the Customer Service Summary and the Wireless Service Agreement) that "were deceptive, misleading and utterly incomprehensible to the average consumer with regard to 'additional charges' and how these charges would be priced." *Id*.

2

¶ 12. Specifically, Plaintiff claims Defendants "deliberately misled consumers as to the actual cost of the DataConnect plan with respect to usage above 5GB per month" because consumers were not informed and could not reasonably have known "that usage of double or triple the 5GB covered by the $60.00 'rate plan charge' would result in charges running into the thousands of dollars." *Id.* ¶ 13. Plaintiff further alleges in Count I that "Defendants' misrepresentations and omissions with regard to additional charges on the DataConnect plan were material and were relied upon by Plaintiff and other consumers when they decided to purchase the netbook computers at the discounted price and subscribe to the AT&T DataConnect plan." *Id.* ¶ 14. Plaintiff's statutory claim is asserted in Count II of the Complaint, which alleges simply that "[t]he misrepresentations and omissions made by the Defendants with regard to additional charges on the AT&T DataConnect plan were deceptive trade practices and unfair trade practices as defined by the Consumer Protection Acts of the various States in which the plan was sold." *Id.* ¶ 15.

Defendants' motions seek dismissal of Plaintiff's claims because she has failed to plead fraud with particularity as required by Rule 9(b) and failed to state a claim under Rule 12(b)(6). Specifically, Defendants present copies of the documents referenced in the Complaint – the Customer Service Summary and the Wireless Service Agreement – as well as another document allegedly referenced in the Wireless Service Agreement, a Rate Plan Brochure. Defendants contend the "additional charges" about which Plaintiff complains are fully disclosed in these documents and Plaintiff's fraud claim fails because she has not identified any false representation and cannot show she reasonably relied on any alleged misrepresentation. As to the consumer protection claim, Defendants contend Plaintiff has failed to identify any "deceptive trade practice" or "unfair trade practice" as defined by the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, § 751 *et seq.*

3

**Standard of Decision**

Dismissal for failure to state a claim is proper under Rule 12(b)(6) "if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.'" *Macarthur v. San Juan County*, 497 F.3d 1057, 1064 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Claimants must "do more than generally allege a wide swath of conduct" but, instead, must allege sufficient facts to "nudg[e] their claims across the line from conceivable to plausible." *Robbins*, 519 F. 3d at 1247 (quoting *Twombly*, 550 U.S. at 570); *see Iqbal*, 129 S. Ct. at 1952. The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotation omitted).

Allegations of fraud are governed by the heightened pleading requirements of Rule 9(b), which provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud, and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences

thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 726-27 (10th Cir. 2006) (internal quotation s omitted); *see Tal v. Hogan,* 453 F.3d 1244, 1263 (10th Cir. 2006). To determine if factual allegations satisfy Rule 9(b), the Court reviews only the text of the complaint and does not consider matters outside the pleading. *See Sikkenga*, 472 F.3d at 726; *Tal*, 453 F.3d at 1263. However, a document that is central to the plaintiff's claim and referred to in the complaint may properly be considered. *See Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008); *Tal*, 453 F.3d at 1265. The Court accepts "as true all well-pleaded facts, as distinguished from conclusory allegations, and view[s] those facts in the light most favorable to the non-moving party." *Sikkenga*, 472 F.3d at 726.

## Discussion

**A.    Fraud Claim**

As pled in the Complaint, Plaintiff's claim of fraud in Count I is based on alleged false and misleading advertising and documents. Setting aside a conclusory allegation that Plaintiff relied on material misrepresentations and omissions, it is unclear from Plaintiff's factual allegations whether she is alleging a false statement or an omission in Defendants' advertising and documents. Upon examination of Plaintiff's factual allegations, the only mention of advertising appears in Paragraph 7 of the Complaint, fully quoted above. Paragraph 7 does not identify any false statement nor suggest an actionable omission in any advertising. Therefore, the Court finds Plaintiff fails to plead with particularity, as required by Rule 9(b), a fraud claim based on Defendants' advertising.

From arguments in Plaintiff's brief, it appears the real focus of her fraud claim is the documents used to sell her a computer and an internet service plan. Plaintiff admits that copies of

these documents, submitted by Defendants with their motions, may properly be considered.[2]  *See* Pl.'s Combined Resp. Br. [Doc. 37] at 14. Plaintiff's factual allegations about these documents, the Customer Service Summary and Wireless Service Agreement, are set forth in Paragraphs 8 and 9 of the Complaint, set forth above. Upon examination of Plaintiff's allegations in combination with the documents to which they refer, the Court finds that Plaintiff has not identified any false statement in the documents. Rather, Plaintiff complains of an omission of information, that is, a statement of the limited amount of data transmission covered by the monthly charge of $60.00 and the excessive rate charge for additional data above the base amount. This information appears in an abbreviated form in the Customer Service Summary as follows:[3]

> Rate Plan: Data Connect plan with WIFI access-5GB
> .00048/kb  ovrg

Plaintiff contends this abbreviated statement, which appears three times within the Customer Service Summary, does not sufficiently convey the data transmission charges authorized under the rate plan and this lack of clarity amounts to a fraudulent omission. The Court finds this alleged omission, argued extensively in Plaintiff's brief, is sufficiently identified in Paragraph 9 of the Complaint, where Plaintiff alleges she "could not have reasonably discerned from the paperwork that wireless internet usage exceeding 5GB per month would result in astronomical additional charges."

---

[2] Defendants have also submitted what they claim to be an additional document referred to in the Wireless Service Agreement as a Rate Plan Brochure. Plaintiff does not refer to this document in the Complaint and, in her brief, denies having received it at the time of her purchase. Although the copies submitted by Defendants are barely legible, the Court has examined them. The Court finds nothing in the document that identifies it as a Rate Plan Brochure, and of course, Plaintiff does not concede that it is an authentic copy of the document referenced in the Wireless Service Agreement. Therefore, the Court will not consider it in ruling on Defendants' motions.

[3] The Wireless Service Agreement does not state a particular rate plan but incorporates by reference another document, AT&T's Rate Plan Brochure. This document is not properly before the Court. *See supra* note 5.

The question thus presented is whether Defendants' alleged omission of sufficient rate information to allow Plaintiff to anticipate the usage charges she would incur amounts to actionable fraud. A claim of fraud or constructive fraud based on a nondisclosure of information requires the existence of a duty to disclose the information due to the "peculiar circumstances" of a particular case. *See Thrifty Rent-A-Car Systems, Inc. v. Brown Flight Rental One Corp*., 24 F.3d 1190, 1195 (10th Cir. 1994); *see also Specialty Beverages, L.L.C. v. Pabst Brewing Co*., 537 F.3d 1165, 1181 (10th Cir. 2008); *Varn v. Maloney*, 516 P.2d 1328, 1332 (Okla. 1973); *Silk v. Phillips Petroleum Co*., 760 P.2d 174, 179 (Okla. 1988). Plaintiff fails to allege in her pleading factual circumstances to support a claim of fraudulent nondisclosure in this case. The reader is left to speculate, for example, whether the amount of data covered by the monthly rate was sufficiently limited that one with technical knowledge like Defendants should have disclosed this term to an average consumer like Plaintiff or whether, as argued in Plaintiff's brief, her statement to the sales person concerning how she planned to use the computer called for a cautionary statement to her.[4]

In short, the Court finds that the Complaint fails to allege sufficient facts to conclude that Defendants had a duty to disclose ATTM's rate plan structure to Plaintiff, such that an inadequate disclosure amounted to actionable fraud. Therefore, the Court finds that Plaintiff's allegations, as presently stated in the Complaint, fail to state a claim of fraud.

**B.     Consumer Protection Act**

Although not cited in her pleading, Plaintiff's claim in Count II is that Defendants violated the catchall provision of the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, § 753(20), by

---

[4] Defendants deny they had any duty to disclose the rate plan in the Customer Service Summary or Wireless Service Agreement, or to explain the technical terms on which the rate plan was based. The Complaint provides no factual basis to evaluate their arguments.

engaging in conduct that amounted to an unfair trade practice and a deceptive trade practice. These terms are defined in the Act. An unfair trade practice "means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id*. § 752(14). A deceptive trade practice "means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person." *See* Okla. Stat. tit. 15, § 752(13).

Plaintiff provides no legal authority for her contention that the facts alleged in the Complaint amount to an unfair trade practice, except to cite the statute and a factually distinguishable case, *Patterson v. Beall*, 19 P.3d 839 (Okla. 2000). In that case, the supreme court concluded that a real estate appraiser who demanded payment for an appraisal that was neither requested nor performed and filed a false lien on the property based on the demand, had committed an unfair trade practice. This case does not allege similarly unethical or oppressive conduct. As to a deceptive trade practice, Plaintiff has neither alleged that a false statement was made nor sufficiently alleged that an actionable omission occurred, as found above. Plaintiff also does not identify facts that suggest Defendants engaged in a practice that could reasonably be expected to deceive a consumer. If Plaintiff is complaining about ATTM's rate plan, her claim might implicate a statutory exemption for transactions regulated by a regulatory body of the state or the United States. *See* Okla. Stat. tit. 15, § 754; *see also Brice v. AT&T Comm.*, 32 P.3d 885, 887 (Okla. Civ. App. 2001) (OCPA claim was a billing or rate dispute within the primary jurisdiction of the Corporation Commission). Absent greater specificity, the sufficiency of Plaintiff's allegations to state a claim under the Oklahoma Consumer Protection Act is unclear.

8

In short, the Court finds that Plaintiff has failed to provide sufficient factual allegations to establish a violation of the Oklahoma Consumer Protection Act and, therefore, that the Complaint fails to state a claim for relief under the Act.

**Conclusion**

For these reasons, the Complaint fails to state a claim upon which relief can be granted. Under the circumstances, however, Plaintiff should receive an opportunity to amend her pleading to cure the deficiencies identified herein.

IT IS THEREFORE ORDERED that Defendant Radio Shack Corporation's Motion to Dismiss for Failure to State a Claim [Doc. No. 28] and Defendant AT&T Mobility, LLC's Motion to Dismiss Class Action Complaint [Doc. No. 29] are granted. Plaintiff Billie Parks may file an amended complaint within 20 days from the date of this Order.

IT IS SO ORDERED this 4th day of March, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE