IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BILLIE PARKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-09-212-D |
| | ) | |
| AT&T MOBILITY, LLC and | ) | |
| RADIO SHACK CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## **O R D E R**

Before the Court are motions for summary judgment filed by Defendant AT&T Mobility,
LLC ("ATTM") [Doc. No. 103] and Defendant Radio Shack Corporation ("Radio Shack") [Doc.
No. 104]. Both seek a judgment as a matter of law pursuant to Fed. R. Civ. P. 56 on the claims
asserted in the Second Amended Complaint.[1] Plaintiff Billie Parks has responded in opposition to
the Motions, and Defendants have replied. Because Defendants present similar challenges to the
sufficiency of Plaintiff's evidence to support a claim for relief, the Motions will be addressed
together.

### **Plaintiff's Claims**

Plaintiff asserts claims of fraud and violation of the Oklahoma Consumer Protection Act
based on a retail transaction in which Plaintiff purchased a personal computer from Radio Shack and
obtained a discounted price by subscribing to a two-year service contract with ATTM. Plaintiff
alleges that the relevant documents – primarily, an advertising circular, a customer service summary,
and a wireless service agreement – omitted material facts regarding ATTM's wireless data plan, and
were "drafted in such a manner as to conceal from reasonable customers including Plaintiff the

---

[1] Plaintiff has abandoned the claim for class action treatment asserted in prior pleadings.

exorbitant overage charges that the customer could incur." *See* Second Am. Compl. [Doc. No. 80], ¶¶ 16, 25. Plaintiff asserts a claim of fraud in Count I of the Second Amended Complaint based on Defendants' alleged nondisclosure of material information regarding the rate plan and product usage, and presentation of information in a deceptive manner that prevented an average consumer from realizing the true cost of overage charges. By this conduct, Defendants allegedly prevented Plaintiff from making an intelligent decision "whether to buy the DataConnect plan at all or self-limit the usage of the plan to avoid punitive overage charges." *Id*. ¶ 35. Plaintiff's theory of constructive fraud lies in the alleged fact that she "was not informed, nor could she have reasonably discerned from the paperwork she was given, that wireless internet usage exceeding 5GB per month would result in astronomical additional charges running into the thousands of dollars." *Id*. ¶ 8.

As a result of the alleged fraud, Plaintiff claims she "sustained actual damages by reason of incurring overage charges and damage to her credit." *Id*. ¶ 36. Although the Second Amended Complaint does not allege any facts regarding damage to Plaintiff's credit, it does allege facts regarding the charges incurred; it states that Plaintiff received a bill from ATTM for the first full month of usage in the amount of $5,077.81. In addition to actual damages, Plaintiff seeks punitive damages for "intentional and malicious" conduct. *Id*. ¶ 37. In her prayer for relief, Plaintiff also requests equitable remedies of rescission of the two-year "DataConnect contract" and an "injunction forbidding the enforcement of the additional charges provision" of the contract. *Id*. ¶ 45.

Plaintiff's statutory claim is asserted in Count II of the Second Amended Complaint, which incorporates previous factual allegations and states simply that "[t]he misrepresentations and omissions by AT&T and Radio Shack in their advertising circular and Customer Service Summary in fact deceived Plaintiff and could have reasonably been expected to deceive or mislead other persons to the detriment of such persons." *Id*. Plaintiff asserts that these misrepresentations and

omissions constitute deceptive and unfair trade practices as defined by the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, § 752 (hereafter, the "Act").  *See* Second Am. Compl. [Doc. No. 80], ¶¶ 39-41.  Plaintiff claims that Defendants violated the catchall provision of the Act, § 753(20), by engaging in "unlawful practices," that is, conduct that amounted to a deceptive trade practice or an unfair trade practice.  *Id.* ¶ 43. Plaintiff's alleged injury from these practices is her "incurring the exorbitant overage charges" for wireless internet service.  *Id.* ¶ 42.  For relief under Count II, Plaintiff claims an entitlement to "actual damages sustained and the cost of this litigation including a reasonable attorney fee pursuant to Section 761.1 of the Act."  *Id.* ¶ 44.

### Defendants' Motions

ATTM seeks summary judgment on the ground that Plaintiff suffered no injury, which is an essential element of both her fraud and statutory claims.  ATTM notes that Plaintiff has conceded during discovery that she suffered no harm to her credit rating, and has withdrawn her request for damages based on this alleged injury.  ATTM contends that Plaintiff sustained no damages for overage charges because she never paid the disputed bill or any additional late fees or usage charges, and ATTM subsequently waived all such fees and charges.  ATTM also contends that punitive damages are not available without actual damages, and that Plaintiff cannot recover attorney fees or equitable relief under the circumstances.

Radio Shack goes further and contends both that Plaintiff suffered no injury and that she cannot establish other essential elements of her fraud and statutory claims against it.  Specifically, with regard to fraud, Radio Shack contends that it had no duty to explain the discounted sales transaction and ATTM's rate plan, that Plaintiff did not make a reasonable effort to inform herself about the transaction, and that she cannot show justifiable reliance on any misrepresentation or omission by Radio Shack.  Similarly, with regard to the Act, Radio Shack argues that Plaintiff

cannot establish an unlawful trade practice or a resulting injury.  Like ATTM, Radio Shack also asserts that a finding of actual damages is a prerequisite to the recovery of punitive damages.

### Standard of Decision

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party.  *Id*. at 255.  All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party.  *Id*.  If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment.  *Celotex*, 477 U.S. at 322-23.  If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial.  *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A).  "The court need  consider only the cited materials, but may consider other materials in the record."  *See* Fed. R. Civ. P. 56(c)(3); *see also Adler*, 144 F.3d at 672.  The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Undisputed Facts [2]

In December, 2008, Radio Shack advertised the sale of an Acer "Netbook" computer with built-in broadband internet for a discounted price of $99.99 if purchasers subscribed to a wireless data plan offered by ATTM and agreed to a two-year term of service. The advertisement contained no information about the wireless plan except to state the discount offer required a "qualifying new 2-year AT&T AirCard agreement on rate plans $60/mo. or more." *See* Def. Radio Shack's Mot. Summ. J., Ex. 1 [Doc. No. 104-2] at 1. Also, the "fine print" at the bottom of the advertising page stated: "Price requires credit approval, up to $36 activation fee and $175 early-termination fee. Monthly access and other airtime charges and taxes apply." *Id.*

On December 18, 2008, Plaintiff purchased the advertised computer for $99.99 at a Radio Shack store in Midwest City, Oklahoma. Plaintiff made the purchasing decision based on the advertisement; she did not question the salesperson about it or what the phrase "other airtime charges" meant. Plaintiff has testified, however, that she stated an intention to replace her home internet service with the Netbook computer and wireless data plan, and the sales associate did not mention limitations on the data plan or usage charges. During the sales transaction, Plaintiff entered into a two-year service agreement with ATTM for its DataConnect plan, and she received two

---

[2] This statement includes material facts presented by both parties that are supported as required by Fed. R. Civ. P. 56(c)(1). If a party has asserted a fact, or asserted that a fact is disputed, but has failed to provide such support, the assertion is disregarded. All facts are stated in the light most favorable to Plaintiff.

ATTM documents, a "Customer Service Summary" and a "Wireless Service Agreement."  *See* Def.

AT&T Mobility LLC's Mot. Summ. J., Ex. 2 [Doc. No. 103-2] and Ex. 3 [Doc. No. 103-3].[3]

The Customer Service Summary contained the following notation concerning the rate plan, which was repeated twice within the document:  "Data Connect plan with WIFI access-5GB .00048/kb ovrg."  *See id.*, Ex. 3 [Doc. No. 103-3] at 1, 2.  The front page listed a rate plan charge of $60.00, with an asterisk referring to a note:  "Additional charges apply.  See page 2 for details." *Id.* at 1.  The second page listed a monthly service charge of $60.00 for the rate plan, and disclosed other monthly fees and taxes.  In a section entitled, "Usage, Additional Minutes, Roaming, Directory Assistance (411) and Long Distance Charges," the following words appear:  "BASED ON ACTUAL USAGE."  *Id.* at 2.  The Customer Service Summary also contained other information regarding telephones and telephone service that was inapplicable to the transaction.  For example, it stated that features such as voice mail, call hold, and message waiting were "Included," *id.* at 1, and it listed rates for charges such as airtime minutes and 411 calls.

Plaintiff signed the Wireless Service Agreement, which advised her of the early termination fee and a 30-day cancellation policy.  Although the agreement was a one-page document, it stated that it incorporated other documents, including a "Terms and Conditions Booklet," a "Rate Plan Brochure," and "Features Brochure(s)."  *See id.*, Ex. 2 [Doc. No. 103-2].  Above the signature block, the following statement appears:   "I HAVE READ, UNDERSTAND, AND AGREE TO BE BOUND BY THIS AGREEMENT WITH ITS SEPARATE TERMS OF SERVICE, RATE PLAN BROCHURE AND FEATURES BROCHURE(S) . . . ."  *Id.*  Plaintiff also signed a Radio Shack

---

[3] Radio Shack has submitted the same documents for the summary judgment record. *See* Def. Radio Shack's Mot. Summ. J., Ex. 3 [Doc. No. 104-4] and Ex. 4 [Doc. No. 104-5].  For convenience, the Court utilizes only the first record citation in this Order.

receipt containing similar language in lowercase letters.  Plaintiff has testified that she did not receive the referenced documents.  It is undisputed that Plaintiff did not ask any questions about the forms or the terms of the wireless plan, and that the salesperson provided no explanation of them.

Shortly after Plaintiff purchased the computer, she received an initial bill from ATTM in the amount of $114.82, which she paid.  The bill included advance payment of the monthly service charge for "DataConnect_5GB", and reflected a summary of data usage showing both the amount included in the plan ("524,288") and the amount used to date ("36,508").  *See* Def. Radio Shack's Mot. Summ. J., Ex. 6 [Doc. No. 104-7] at 4.  The bill gave no indication of what charges might be incurred for excess data usage.  A month later, Plaintiff received her second bill, reflecting her first full month of service ending January 20, 2009.  In addition to the monthly service charge, this bill showed usage charges of $5,077.81.  Regarding data usage, the bill stated the amount included in the plan ("5,242,880"), the amount used ("15,821,587"), and the amount for which charges were billed ("10,578,707").  *See* Def. AT&T Mobility LLC's Mot. Summ. J., Ex. 4 [Doc. No. 103-4] at 4.  Plaintiff called ATTM the next day to inquire about the bill.  During the call, the representative with whom she spoke informed her about the data limit of her rate plan, and stated that he was not authorized to waive the overage charges on her bill but he would investigate.

On February 24, 2009, approximately one week after calling ATTM, Plaintiff filed her initial class-action pleading in this case, alleging that ATTM and Radio Shack deliberately misled consumers regarding the Netbook promotion and the actual cost of the DataConnect plan with respect to usage above 5GB per month.  After Plaintiff filed suit, she subsequently received another ATTM bill for the month of service ending February 20, 2009, which included usage charges of $102.85 in addition to the monthly service charge.  Of these usage charges, $102.45 was billed for

excess data usage (reflecting total usage for the month of 5,456,330 and an overage of 213,450).[4] The bill also showed additional charges, including a "Restoral Fee" and a late payment fee. *See* Def. AT&T Mobility LLC's Mot. Summ. J., Ex. 5 [Doc. No. 103-5] at 3. Plaintiff admits, however, that she has never paid any amounts billed by ATTM for disputed charges that are the subject of her claims in this case. Other than continuing to send Plaintiff monthly bills, ATTM has made no demands for payment of the amounts that are the subject of her claims, and has undertaken no other collection efforts. ATTM has not furnished any information relating to Plaintiff's account to any consumer reporting agency. During discovery, Plaintiff abandoned allegations regarding damage to her credit rating as a result of the dispute, and no longer claims this alleged injury. Also, the two-year term of Plaintiff's wireless service agreement with ATTM has expired.

In October, 2011, Plaintiff was informed, through counsel, that ATTM had waived all charges on her wireless account and there is no outstanding balance. ATTM stated that the waiver of overage charges was consistent with a policy that existed in February, 2009, which permitted such a waiver when a customer misunderstood the usage limits of a data plan. In addition, ATTM tendered a check in the amount of $184.42 to reimburse Plaintiff for all amounts paid on the account. Plaintiff refused to accept this tender, for the stated reason that she did not misunderstand the rate plan but was instead deprived of material information regarding data usage and price. *See* Parks Aff. [Doc. No. 116-1] at 2.

During discovery, Plaintiff has repeatedly been asked to identify the injuries she suffered and the damages she incurred as a result of the alleged fraudulent conduct of Defendants. Consistent with the allegations of her Second Amended Complaint, Plaintiff answered interrogatories by stating

---

[4] Plaintiff testified during her deposition that she did not open this bill and that she ignored all statements from ATTM after the first bill reflecting overage charges.

that the actual damages on her claims consist of "[o]verage charges in the amount of $5,077.81, and additional late fees and usage charges that have been accruing since 2009." *See* Def. AT&T Mobility LLC's Mot. Summ. J., Ex. 8 [Doc. No. 103-8] at 2. Asked to produce documents relating to her actual damages, Plaintiff responded with copies of her monthly billing statements from ATTM. *See* Def. AT&T Mobility LLC's Mot. Summ. J., Ex. 10 [Doc. No. 103-10] at 2. During her deposition, Plaintiff testified that the damages she is claiming are the charges reflected in the ATTM bills on her wireless account and she is claiming no other damages. *See* Parks Dep. [Doc. No. 104-3], 66:4-67:8, 75:14-76:5. In response to the summary judgment motions, however, Plaintiff has submitted an affidavit in which she identifies other injuries and items of damages.

Plaintiff now states that she would not have purchased the Netbook computer from Radio Shack if the usage limit of the DataConnect plan and the overage rate had been properly disclosed but, instead, "would have walked away from the transaction entirely." *See* Parks Aff. [Doc. No. 116-1] at 1. Also, Plaintiff states she was "worried sick" about how to pay the exorbitant overage charges after she called ATTM and learned the bill for over $5,000 was not a mistake, and she was "extremely concerned" about what she would do if ATTM pressed for payment. *Id*. at 2. Based on these new facts, Plaintiff argues in her brief that she is entitled to recover all sums paid in the transaction, including the cost of the Netbook computer, and that her worry will support an award of emotional distress damages, notwithstanding ATTM's decision to waive all charges.

## Discussion

### A.     Summary Judgment Evidence

Defendants object to Plaintiff's assertion of new theories of damages because they were not alleged in her Second Amended Complaint, the deadline for amended pleadings expired long ago, and Plaintiff has not requested leave to amend.  ATTM also contends that Plaintiff's new alleged injuries, supported only by an affidavit submitted to avoid summary judgment, should be disregarded as "sham injuries" or "sham issues of fact."  *See* Def. AT&T Mobility LLC's Reply Br. [Doc. No. 122] at 2, 3-4.

The Court agrees with Defendants that Plaintiff should not be permitted to raise a new theory of liability and a new element of damages, based on facts not alleged in the Second Amended Complaint, at this late stage of the case.  Before filing her summary judgment response, Plaintiff never alleged that she would not have purchased the Netbook computer if she had received full disclosure of the usage limits and overage charges of the DataConnect plan.  Notably, the Second Amended Complaint seeks only rescission of the "DataConnect contract" and an injunction against "enforcement of the additional charges provision."  *See* Second Am. Compl. [Doc. No. 80], ¶ 45(a), (d).  No allegation in the Second Amended Complaint could fairly be read to claim that Defendants' alleged nondisclosure of material information about the DataConnect plan caused Plaintiff to purchase the Netbook computer.  Instead, Plaintiff complained only that the nondisclosure caused her to incur exorbitant overage charges and, as an ordinary consumer, prevented her from making an intelligent decision "whether to buy the DataConnect plan at all or self-limit the usage of the plan to avoid the punitive overage charges."  *Id*. ¶ 35.

In reaching this conclusion, the Court is guided by the court of appeals' decision in *Elliott Industries Limited Partnership v. BP America Production Co*., 407 F.3d 1091 (10th Cir. 2005).  In

that case, a district court's decision to reject a plaintiff's claim for nonpayment of royalties due under certain oil and gas leases was affirmed on the ground that the claim was never part of the case. The court of appeals reasoned as follows:

> Generally, failure to set forth in the complaint a theory upon which the plaintiff could recover does not bar a plaintiff from pursuing a claim. *Green Country Food Market, Inc. v. Bottling Group, LLC*, 371 F.3d 1275, 1279 (10th Cir. 2004). "The liberalized pleading rules, however, do not permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case." *Id.* This is particularly true if permitting a plaintiff to change its theory will prejudice the other party in maintaining its defense. *Id.* In this instance Elliott, in its summary judgment motion, attempted to assert an entirely new factual basis for relief which had not heretofore been a part of the case. . . . Elliott had never asserted in its complaint that this was a basis for liability and to permit Elliott to make this claim at such a late stage in the proceedings would risk prejudicing [the defendant].

*Id.* at 1121-22 (footnote omitted). For this reason, the court of appeals held that the district court properly rejected a claim that the plaintiff never raised before filing a summary judgment motion. Similarly here, Plaintiff's new claim that she was induced by Defendants' alleged fraud to purchase the Netbook computer has never been part of this case, and cannot provide a basis for recovery of damages at this point in the litigation.

Further, Plaintiff's new contention that Defendants' alleged omissions of information caused her to purchase the Netbook computer is flatly inconsistent with prior, sworn testimony and amounts to a "sham fact issue" under controlling precedent. Although contradictions in a witness's testimony generally do not justify disregarding a summary judgment affidavit, a district court may decide to exclude a contradicting affidavit from consideration if the court finds "that 'it constitutes an attempt to create a *sham fact issue*.'" *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001) (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986); emphasis added by the court in *Ralston*); *see also Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1016 (10th Cir. 2002). Factors to be considered include "whether: '(1) the affiant was cross-examined

during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain.'" *Ralston*, 275 F.3d at 973 (quoting *Rios v. Bigler*, 67 F.3d 1543, 1551 (10th Cir. 1995)); *see also Franks*, 796 F.2d at 1237.

Here, Plaintiff was examined at length during her deposition on October 17, 2011, concerning the retail transaction at issue, her decision to purchase the Netbook computer through the sales promotion, and her claim of fraud. Her deposition testimony was clear and unequivocal. There is no reason to believe that Plaintiff was confused about the basis of her decision, which is not affected by any new evidence, or that she was unsure of her claim. Under the circumstances, the Court finds that Plaintiff's later change of her testimony to say she would not have purchased the computer if she had been fully informed about ATTM's data plan constitutes an effort to establish an additional injury and defeat Defendant's summary judgment arguments. The Court further finds that Plaintiff is attempting through this affidavit testimony to create a sham fact issue, and that the testimony should be disregarded.

Similarly, Plaintiff alleged no facts in the Second Amended Complaint and did not otherwise claim that she suffered any emotional distress as a result of Defendants' conduct. She also made no mention of any mental anguish in her deposition testimony. Instead, Plaintiff simply includes conclusory statements in her new affidavit testimony that she was "worried sick" and "extremely concerned" about the large bill for overage charges. The Court finds these vague statements, coupled with Plaintiff's failure to assert any basis for emotional distress damages in her pleading, preclude any recovery of such damages. In so finding, the Court is guided by the court of appeals decision in *Doelle v. Mountain States Telephone & Telegraph*, 872 F.2d 942, 948 (10th Cir. 1989),

that a failure to plead emotional distress damages precludes any award of such damages without obtaining leave for the plaintiff to amend the complaint. Here, Plaintiff has not requested a further amendment of her Second Amended Complaint, and the deadline for amended pleadings expired long ago. Accordingly, the Court finds that Plaintiff cannot rely on any belated allegation of emotional distress to establish an injury in this case. Therefore, the vague references in Plaintiff's affidavit to worry and concern will be disregarded.

## B.   Proof of Fraud

Radio Shack contends Plaintiff cannot establish her fraud claim as a matter of law because she cannot prove two elements: 1) a material misrepresentation or omission, arguing there was no duty to explain ATTM's data plan and overage rate to Plaintiff; and 2) justifiable reliance on any representation or omission, arguing Plaintiff did not exercise reasonable diligence to inform herself about the plan terms. *See Silk v. Phillips Petroleum Co*., 760 P.2d 174, 179 (Okla. 1988). Radio Shack relies on the undisputed facts that Plaintiff, a literate consumer, failed to read the documents she signed and that the documents plainly disclosed the "5GB," or five gigabyte, data limit of the rate plan and the charge for excess data usage. Plaintiff responds to these arguments by quoting the Court's prior ruling on Defendants' motions to dismiss the Second Amended Complaint, and citing facts to support the allegations that the Court found to be sufficient to state a claim of fraud or constructive fraud based on a partial or selective disclosure of information. *See* Pl.'s Suppl. Resp. Def. Radio Shack's Mot. Summ. J. [Doc. No. 120] at 8, 10-11.

Plaintiff's broad-brush argument in opposition to Radio Shack's careful analysis of the evidence fails to identify precisely what material misstatement or omission constituted the alleged

fraud.[5]  The allegations of Plaintiff's pleading complain of both a failure to disclose the data usage

limit – causing Plaintiff to believe it was an unlimited data plan – and a failure to disclose the

overage charge rate – causing Plaintiff to incur exorbitant charges without knowing about this

possibility.  *See* Second Am. Compl. [Doc. No. 80], ¶¶ 16, 21.  The facts developed through

discovery make clear, however, that Plaintiff's belief that the DataConnect plan provided for

unlimited data usage at the monthly service rate was not based on any statement or lack of disclosure

by Defendants.  The documents provided to Plaintiff during the sales transaction, which she signed,

stated that the rate plan was "DataConnect-5GB."  Regardless whether Plaintiff understood that

"5GB" referred to a data usage limit, she has identified no statement in Radio Shack's advertising

circular or ATTM's service agreement or summary that could reasonably be read to promise an

unlimited data plan.  Instead, Plaintiff has testified that she assumed the plan would be unlimited

based on advertisements and discussions with friends about wireless telephone plans available at the

time.[6]  From these facts, the Court finds that no reasonable juror could find a material statement or

omission on which Plaintiff justifiably relied with regard to the monthly usage limit of the

DataConnect plan.

The Court reaches a different conclusion, however, regarding the purported disclosure of the

overage charge in a cryptic notation of numbers and letters, ".00048/kb ovrg."  While the overage

rate for data usage in excess of the monthly limit was thus disclosed, the disclosure does not

---

[5]  Plaintiff primarily argues that Radio Shack, as ATTM's partner in a joint venture, may be held liable for ATTM's misleading materials and practices.  Because Radio Shack does not address this issue in its summary judgment briefs, the Court does not decide it.

[6]  Plaintiff appears to rely on the salesperson's failure to disclose a data limit when she mentioned replacing her home internet service with ATTM's wireless plan.  Plaintiff does not explain, however, how her statement might have created a duty of disclosure.  Mere use of the internet does not suggest a volume of data usage, which depends on the purposes for, or ways in which, an individual uses the internet.

reasonably convey the cost of excess date usage that the rate represents. From the record presented, a reasonable fact finder could conclude that Defendants stated the overage rate in a manner that concealed the true nature of the charge. Further, a reasonable fact finder could conclude that an ordinary consumer would not reasonably have understood the significance of the notation. Defendants do not point to any facts that might suggest to a reasonable person that a consumer rate plan providing five gigabytes of data usage for $60.00 per month would include a penalty rate of $500.00 for each additional gigabyte of data. In short, the Court easily finds that reasonable minds could differ about whether the disclosure of overage charges was stated in a way that concealed the true cost of overage charges, and constituted a material misstatement or omission of facts. Further, if proof of justifiable reliance is necessary, the Court finds that Plaintiff's reliance on the incomplete disclosure – by using the computer and wireless service in a way that generated an exorbitant bill for overage charges – could reasonably be found from the facts and evidence presented. Accordingly, the Court finds that genuine disputes of material facts preclude summary judgment on Plaintiff's claim of fraud based on concealment of the true cost of overage charges, if Plaintiff suffered compensable damages, which is a necessary element of a fraud claim.

**C.    Damages for Fraud**

Defendants contend that Plaintiff's fraud claim fails as a matter of law due to her inability to establish any damages resulting from the alleged fraudulent nondisclosure of information regarding ATTM's rate plan and overage charges. An essential element of Plaintiff's stated claim is that she "suffered damages as a result of defendant's material misstatement or omission." *See Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165, 1181 (10th Cir. 2008). To establish this element, Plaintiff must show she suffered injury by acting in reliance on the alleged fraudulent statement or omission. *See State ex re. Southwestern Bell Tel. Co. v. Brown*, 519 P.2d

491, 495 (Okla. 1974); *see also LeFlore v. Reflections of Tulsa, Inc.*, 708 P.2d 1068, 1076 (Okla. 1985). "The gist of an action for fraud is [that] the damage sustained is the natural and probable consequence of the acts charged . . . ." *LeFlore*, 708 P.2d at 1076.

The Oklahoma Supreme Court's analysis of the harm suffered by the plaintiff in *LeFlore* is instructive. In that case, the plaintiff entered a beauty contest based on an advertisement promising an "all expense paid" Caribbean cruise to the winner, but she learned after winning the contest that transportation to and from the point of embarkation was not included. *See id*. at 1070. The plaintiff sought damages for the alleged fraud equal to the value of the cruise tickets and round trip airfare. After the jury returned a verdict in her favor and awarded actual and punitive damages, the defendant appealed on the ground, among others, that the plaintiff failed to plead and prove recoverable damages. In rejecting this contention, the supreme court reasoned that the beauty contestant suffered a loss or harm as a result of the fraudulent advertisement because she altered her position, that is, she entered the contest, in reliance on a false representation regarding the prize.

Turning to the issue of the proper measure of damages for this injury, the supreme court considered two possible measures: "1) out of pocket damages and 2) benefit of the bargain damage." *Id*. After discussing these two theories, the supreme court concluded: "Oklahoma, by decisional law, has adopted a form of the benefit of the bargain measure in fraud actions, allowing the plaintiff to recover the difference between the actual value received and the value the defrauded party would have had if it had been as represented." *Id*. at 1077 (citations omitted). The court also concluded that the plaintiff had sought, and had properly been awarded by the jury, the benefit of her bargain, reasoning as follows:

> Because [the defendant] represented an all expense trip would be given, [the plaintiff], as the winner of the contest, is entitled to recover the damages sought in her first cause of action provided these damages were the natural and probable result

16

> of the fraudulent inducement. In this case it is clear that the losses [the plaintiff] incurred were the natural and probable result of [the defendant's] misrepresentations. The fact the odds were small [the plaintiff] would win the contest is irrelevant in determining whether losses were the natural and probable result of [the defendant's] misrepresentations; it was almost inevitable the winner would incur damages from these misrepresentations.

*Id.* (internal quotation and citations omitted).

In this case, a reasonable inference to be drawn from the facts is that Plaintiff suffered an actual injury in that she altered her position by accepting the DataConnect rate plan and using ATTM's wireless services for accessing the internet on her Netbook computer. Plaintiff, however, received the benefit of her bargain when she used the computer and the wireless internet service subject to the monthly service charge and fees she expected to pay. Under Plaintiff's view of the facts, the natural and probable result of the alleged fraudulent inducement to use ATTM's wireless services without regard to any overage was that she could incur an excessive amount of additional charges and owe ATTM an amount grossly disproportionate to the monthly service charge.

Even under this view, the facts are undisputed that Plaintiff never paid, and does not currently owe, any additional charges or related fees. When Plaintiff first contacted ATTM about the bill, she was promised an investigation, and no effort to collect the unpaid bills was ever made. Thus, in this case, neither out-of-pocket nor benefit-of-the-bargain damages have been suffered by Plaintiff. In effect, Plaintiff obtained an early termination of the wireless service agreement, outside the 30-day cancellation period, without paying the $175 fee required by the contract and disclosed in the sale circular.

For these reasons, the Court finds that Plaintiff has suffered no compensable injury or damages resulting from a failure to receive the benefit of her bargain. Accordingly, the Court finds

that Plaintiff has failed to demonstrate a genuine dispute of material facts regarding damages for

fraud.  Therefore, Defendants are entitled to summary judgment on Plaintiff's fraud claim.

**D.     Oklahoma Consumer Protection Act**

Defendants similarly contend that Plaintiff cannot prevail on her statutory claim because the

Act affords a private right of action only to an "aggrieved consumer," as that term has been

interpreted by the Oklahoma Supreme Court.[7]  In *Walls v. American Tobacco Co*., 11 P.3d 626

(Okla. 2000), the court held that a consumer can bring an action to recover damages under the Act

only if the consumer has suffered a compensable loss:

> [T]o have a private right of action under § 761.1(A), a consumer must suffer some
> detriment or loss as a result of a violation of the OCPA.  Accordingly, a person may
> not bring an action as an aggrieved consumer under § 761.1(A) solely as a result of
> his or her payment of the purchase price for that product.  An essential element of a
> claim under § 761.1(A) is actual injury or damage caused by a violation of the
> OCPA.

*Id*. at 630.  Absent an actual injury, a plaintiff also cannot recover an award of attorney fees, as

otherwise authorized by the Act, because it is insufficient simply to establish a violation of the Act.

*See Tibbetts v. Sight 'n Sound Appliance Centers, Inc*., 77 P.3d 1042, 1052 (Okla. 2003).

In this case, Plaintiff has paid only the purchase price for the product she received and the

wireless internet service she used.  She did not pay any overage charges or additional fees.   In her

summary judgment brief, Plaintiff has not identified any actual injury or damage caused by the

alleged violation of the OCPA, other than the purchase price of the products involved in the

transaction.  *See* Pl.'s Resp. ATTM's Mot. Summ. J. [Doc. No. 116], 9-10.  Accordingly, the Court

---

[7]  Radio Shack also contends that Plaintiff cannot establish that a violation of the Act occurred.  Like
the claim of fraud, the Court disagrees with Radio Shack's view of the evidence and finds that genuine
disputes of material facts preclude summary judgment on this basis.

finds that Plaintiff has failed to demonstrate a genuine dispute of facts regarding whether she was an "aggrieved consumer" under the Act.

Therefore, Defendants are entitled to summary judgment on Plaintiff's claim for relief under the Act.

## Conclusion

For these reasons, the Court finds that Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact regarding either of her claims, and that Defendants are entitled to a judgment as a matter of law.

IT IS THEREFORE ORDERED that the Motion for Summary Judgment of Defendant AT&T Mobility, LLC [Doc. No. 103] and Defendant Radio Shack Corporation's Motion for Summary Judgment [Doc. No. 104] are GRANTED.  Judgment shall be entered accordingly.

IT IS SO ORDERED this 25th day of September, 2012.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE